## Ida Finkelstein, Appellee, v. City of Chicago, Appellant.

## Gen. No. 16,138.

VERDICTS—*province of court in reviewing size.* It is not the province of the Appellate Court to assess the amount of the plaintiff's damages, but it is within the province of that court to determine where it appears clearly from the evidence that the amount of the judgment is excessive, what, if any part thereof, it would be proper for such court under the evidence to affirm in case the plaintiff chooses to remit the excess.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed on *remittitur*. Opinion filed March 14, 1912. *Remittitur* filed and judgment affirmed March 21, 1912.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for appellant; GEORGE L. REKER, of counsel.

BRANDT & HOFFMANN, for appellee; LEO V. ROEDER, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

The plaintiff—appellee herein—recovered a judgment against the city of Chicago for $7,000, from which judgment this appeal is prosecuted.

Plaintiff's testimony is to the effect that April 2, 1902, she was walking west on the south side of Maxwell street, Chicago, carrying her child in her arms. She says she was walking "slowly and carefully;" that in front of 264 Maxwell street "the board gave way and my foot went in and I fell right down and the child flew out of my hands. I fell on the right side." She says she was "hollering and screaming from pain;" that she was picked up by two gentlemen

who sat her down in front of 264 Maxwell street; that she "didn't know very much for me. I was half fainting." She was put in a patrol wagon by two policemen and carried up stairs to her flat, put to bed and a doctor sent for. She was, she says, "very heavy and stout" and weighed then it is said over 180 pounds, but just before the trial her weight apparently was 118 pounds. One of the doctors who attended her at that time testifies that he found "quite a bit of swelling and contusion and bruising upon the right side, and it was a question in our minds at that time I recollect, whether there was a fracture of the outer portion of the bone or not." He states that he and another doctor, who was present with him at this first examination, thought the malleolus—a bone on the external side of the tibia—was fractured. The two doctors put plaintiff's leg in splints. There is testimony in plaintiff's behalf, given by a doctor who examined her leg in March, 1906, that he "found the woman had a displacement and dislocation of the right ankle;" that the joint is opened up so that there is a "triangular abnormal triangle space in the angle joint;" that "the external malleolus and parts around the external malleolus are enlarged and the external malleolus overrides the outside of the foot so that the body bearing weight instead of being near the center of the foot, where it belongs, is at the outer margin of the foot." There is further testimony of plaintiff to the effect that she wore a plaster cast about eight weeks on the injured leg, that she suffered much pain, that the ankle "has been swollen from that time to this, only sometimes less and sometimes more," that "it swells most in the evening," that "I cannot stand much on it. When I stand on it, it swells. It swells more when I walk;" that her hand and arm hurt her at the time of the injury "very bad;" that the "hand has been getting worse every day; that sometimes it is less and sometimes more;" that "sometimes I tremble a bit;" that

"I can hardly do anything with my hand;" that she was "two months in the family way at the time of thê injury;" that the child "was born in eight months and four days;" that about two years after the birth of that child she gave birth to another; that she had a miscarriage about a year and a half after that; that she had two children before the injury, two since the injury, one miscarriage and one still born.

There is conflict in the evidence as to the nature, extent and existence of some of the ills from which plaintiff claims to be suffering as the result of the injury. This conflict extends to the testimony of medical witnesses. One of the doctors who had known the plaintiff a number of years and was apparently her family physician and was called in and treated the plaintiff in connection with another doctor immediately after the accident, says that while he diagnosed the case to be a swelling of the ankle, and that the two doctors then present "thought" there might be a "tipping of the malleolus," a "tipping of, a crack of the top of the malleolus," that subsequently "we concluded there was no fracture, no complete fracture, simply a sprained ankle." The same doctor who treated her at least eight weeks and until, as he says, he "considered her recovered" and the injury cured, testifies that he never noticed any shaking of the plaintiff's hand then and never discovered any lack of power to use her hand and no symptoms of the "paralysis agitans" or shaking palsy which plaintiff claims to be suffering from as a result of the injury in question. Her own medical witness testifies that "Tic" or St. Vitus Dance can produce the same symptoms, and that plaintiff may have "Tic," which may be produced by traumatic rheumatism. There is testimony tending to show that a physician who attended plaintiff when she was confined subsequent to the accident, and on other occasions since then, heard nothing about the alleged trouble with the plaintiff's right hand and that nothing was

then "said about her arm or her ankle," although he treated her afterward for diabetes, which disease may account for plaintiff's loss of weight and the miscarriage. It does not appear that the diabetes was in any way the result of the accident. There is evidence also tending to show that since the accident she went about her affairs, showing no evidence of trouble with her hand nor lameness in her walk.

It is contended by counsel for appellant that the verdict is against the evidence, that the court erred in not granting a new trial upon affidavits of newly discovered evidence, that the conduct of counsel for appellee was prejudicial to appellant and that the damages awarded by the judgment are excessive.

It is not disputed but that the appellee received some injury from the fall on the alleged defective sidewalk. For this she may be entitled to recover such an amount as would afford adequate compensation. But we believe the judgment is so excessive under the evidence that we should not be justified in affirming it for any such amount. We agree with appellee's counsel in part of the statement that "the sole question before this court is whether the judgment for $7,000 is so grossly excessive" not "as to strike all mankind at first blush as outrageous," as appellant's counsel states it, but so excessive as to require either a reversal or a reduction of the judgment. We have considered the evidence with care. The case has been tried before. There is, as we have said, no question that plaintiff is entitled to recover some damages. It is not the province of this court to assess the amount of plaintiff's damages, but it is within our province to determine where, as here, it appears clearly from the evidence that the amount of the judgment is excessive, what if any part thereof it would be proper for us under the evidence to affirm in case the plaintiff chooses to remit the excess.

If therefore the plaintiff chooses to remit the dif-

ference within ten days, the judgment will be affirmed for twenty-five hundred dollars.   Otherwise the judgment will be reversed and the cause remanded.

*Affirmed on remittitur.*

*Remittitur* filed and judgment affirmed March 21, 1912.